### WESLEY HOGGINS *v.* ELIZABETH ELLISTON.

**Final Judgment—Appeal—Administrator Purchasing Trust Property.**
     An appeal can only be taken from a final judgment, and where two days after rendition a motion is filed to set it aside, the court, so long as the motion was pending, had full power over the judgment; and not being disposed of, the judgment was not final.

**Administrator Purchasing Trust Property.**
     An administrator, who is a creditor of an estate and entrusted with the sale of property to pay debts, cannot legally become the purchaser of such property unless the entire transaction is characterized by the utmost good faith.

APPEAL FROM KENTON COUNTY COURT.

January 25, 1875.

OPINION BY JUDGE LINDSAY:

It seems that Hoggins did not, of his own accord, pay usurious interest on the notes due and owing by Elliston at the time of his

death. Mrs. Elliston, the sole devisee of her husband, on all occasions manifested the desire that the contracts of her deceased husband for the payment of interest should be carried out to the letter, and it may be safely assumed that all the usury paid by Hoggins was paid at her instance.

It is by no means clear, however, that he paid on the debts due to Worthington & Adams, the full amount of the principal and legal interest. A comparison of his bank account, with the hotel book kept by Arlien, rather tends to show that he did not; and we cannot, from the record before us, determine that the court below erred in refusing to allow him credits for the $275 and $50 items, claimed to be interest paid on these debts. It seems that the $45.76 claimed to be usurious interest paid on the debt to Howe ought to have been allowed, as also the $45 interest paid to the bank. The error of $90 on the stable account should have been corrected. Mrs. Elliston in her deed admits the judgment in full of $13,000 and without an averment of mistake or fraud this admission should be accepted as conclusive. Hoggins should have been credited by $585.45, the amount of the note satisfied out of the moneys receive on the lot sold to Hardebecke. .

The allowance to Hoggins as administrator is deemed reasonable; the exceptions thereto of both parties were properly overruled. As Mrs. Elliston was compelled to have the county court settlement corrected by a suit in equity, the fees paid therefor should not have been allowed the administrator. Hamilton is not a party of this appeal; we cannot, therefore, pass upon the allowance made to him.

While Mrs. Elliston may not, by reason of the lapse of time, be allowed to prosecute her own appeal, a question we do not decide, still she can have her exceptions to the master's report inquired into for the purpose of setting off, against errors in her favor, those committed to her prejudice, and thereby, if possible, preserve her judgment.

The court erred in refusing to charge Hoggins with the sum of $810.50, made up of the items of "One mule, $135, one gray horse, $75, pony, $100, two ponies and buggy, $292.50, and a lot of brandy, $208." It is not disputed that all this property came to the hands of Hoggins, nor that he sold it for the sums charged. He insists that the sales were made at different times, and that the money went into the hotel fund, and was from that fund transferred to his bank account, and there charged against him. There is nothing in the record showing that such was the case. The onus is upon him to

show that he was so charged with these sums, yet he utterly fails to do so.

The error in failing to charge him with said $810.50, more than balances errors committed to his prejudice; and hence the judgment of the 5th of January, 1871, cannot be disturbed.

Before proceeding to investigate the controversy arising out of the sale of the stable property, it is necessary to determine whether or not this judgment was final, and whether it disposed of all the matters in controversy. The order fails to show that the cause was then submitted for judgment. The court merely disposes of the exceptions to the commissioner's report. This report makes no reference to the stable transaction, except that Hoggins was charged with the agreed purchase price $13,000. The claim of Mrs. Elliston to one-half the profit realized on the resale, is not mentioned either in the commissioner's report or the judgment.

Besides this, if the judgment would otherwise have been regarded as final, it cannot be so treated under the circumstances of this case, for the reason that two days after it was entered Mrs. Elliston moved to set it aside. So long as this motion was pending, the court had full power over the judgment, and we find it had not been disposed of.

When the cause was submitted for final judgment on the 8th of December, 1871, the court and the parties seem to have regarded the order of judgment of January, 1871, as interlocutory, or at least as not a complete disposition of the matters in controversy; and this fact is evidenced by the failure of appellant to object to the last order of submission. He was certainly in court at that time. We find him excepting to the judgment rendered six months thereafter on the 13th day of June, 1872.

Considering the relations existing between Hoggins and Mrs. Elliston, it is doubtful whether any sale by the latter to the former should be upheld, if profit to any considerable amount should be realized thereon. Hoggins was the administrator of an estate, all of which had been devised to Mrs. Elliston. He exercised complete control over all her property, real and personal. Every cent of money realized from the business carried on by her, was paid into bank to his credit, and he allowed to use it at his discretion. In the judgment of debts owing by the estate, when Mrs. Elliston sold real property, the proceeds were at once placed at the disposal of Hoggins, and in all matters of business she seems to have subordinated her opinions to his judgment.

He held a mortgage upon the hotel property for an amount she could not pay without selling real estate; and accordingly the stable property was put upon the market, and Hoggins entrusted with the negotiations necessary to accomplish a sale. He held this property for a time at from $1,600 to $1,800. He failed in an attempt to sell it at a public auction; and finally he changed his attitude as friend agent and confidential adviser of Mrs. Elliston, and purchased the property for himself.

Two years afterward he sold one-half of it for within a small amount of what he paid for the whole property. The mere statement of these facts presents to the mind the conviction that such a transaction should not be upheld, unless it was characterized by the utmost good faith; and it clearly appears that the sale was unconditional, the vendor retaining no interest inconsistent with the conditions of the deed. Here it appears that Mrs. Elliston did retain an interest in the property. Hamilton swears that she stated in the presence of Hoggins that she was to have one-half of the profit realized when the property should be resold, and that she desired that this agreement should be incorporated in her conveyance, but that he advises her to take a separate writing evidencing this contract. Mervin swears that Hoggins told him that this was his contract, and that he had given Mrs. Elliston a writing to that effect. The loss of the writing is sufficiently accounted for. Hoggins insists that his agreement was oral, and that he was not to divide the profit unless he sold the property before obtaining possession. He fails to prove any such limitation, and the proof conduces to show that the agreement was reduced to writing. In such a case as this, nothing should be presumed in favor of the trustee who has realized such a profit out of a purchase made from the party having confidence in him. It may be unreasonable to suppose that Hoggins agreed to divide the profit at any time he might sell; but it is equally so to suppose that Mrs. Elliston contracted for one-half the profits without stipulating that he should sell at some time. It is sufficient that there was an agreement to divide the profits realized by a sale of the property, that a sale of the portion of it was made, within a reasonable time, and that great profit was realized. These facts make out appellee's right to relief.

Appellant was credited by the amount paid Mrs. Elliston, also by the amounts paid for the additional grounds purchased, also by the amount paid to look up the title, and by the amount expended in making improvements; to this extent the basis of settlement is cor-

rect. But the court erred in assuming that the unsold portion of the property is worth as much as was realized by the sale of the one-half that has been disposed of, and it erred further in compelling Hoggins to purchase Mrs. Elliston's interest in the one-half not sold. After the sale of the first half Mrs. Elliston is entitled to one-half the rents accruing on the one-half not sold. This claim for rents should be set off against Hoggins' claim made up as before indicated. For any balance that may remain on the rents Hoggins should be required to account. When this is done, the unsold half will be regarded and treated as profit, in which the parties own equal undivided interests.

If the parties or either of them so desire, the court may adjudge it to be sold and the proceeds to be divided equally between them. If neither of the parties desire a sale, then Hoggins will be treated as holding the title to the unsold half of the property for the benefit of himself and Mrs. Elliston.

The judgment of the 5th of January, 1871, is *affirmed,* but the judgment of June the 13th, 1872, is *reversed* and the cause remanded for further proceedings consistent with this opinion.

*Carlisle & O'Hara, for appellant.*
*J. W. Stevenson, for appellee.*